UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

COMPASSIONATE HANDS, LLC, a )
Florida limited liability company, JAMES L. )
HANSEN, an Individual, and LARRY R. )
WEAVER, an Individual, ) Case No.: 18-cv-80705
 )
    Plaintiffs, ) JURY TRIAL DEMANDED
 )
v. )
 )
SENIORS HELPING SENIORS, LLC, a )
Delaware limited liability company, PHILIP )
YOCOM, an Individual, and KIRAN )
YOCOM, an Individual, )
 )
    Defendants. )
_____/ )

## COMPLAINT

Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, by and through their undersigned attorney, sue Defendants, Seniors Helping Seniors, LLC, Philip Yocom, and Kiran Yocom, for an amount of damages in excess of $10 million and allege:

## PARTIES

1. Plaintiff, Compassionate Hands, LLC, ("Compassionate Hands") is a Florida limited liability company with its principal place of business at 1940 Sharon Street, Boca Raton, Florida.

2. Plaintiff, James L. Hansen ("Hansen") is a member of Compassionate Hands, LLC. Hansen is a citizen of the State of Florida and is otherwise *sui juris*.

3. Plaintiff, Larry R. Weaver ("Weaver") is a member of Compassionate Hands, LLC. Weaver is a citizen of the State of Indiana and is otherwise *sui juris*.

1

4. Defendant, Seniors Helping Seniors, LLC ("SHS"), is a Delaware corporation with a principal business address of 50 Grandview Boulevard, Wyomissing Hills, Pennsylvania 19609.

5. Defendant, Philip Yocom ("Mr. Yocom"), is a citizen of the State of Pennsylvania and otherwise *sui juris*.

6. Defendant, Kiran Yocom ("Mrs. Yocom"), is a citizen of the State of Pennsylvania and otherwise *sui juris*.

7. Mr. and Mrs. Yocom (collectively the "Yocoms") own and operate the SHS franchise system which has franchise units in Florida and located across the United States of America.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. § 1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9. Defendants are subject to the long arm jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1) because they operated, conducted, engaged in, and/or carried on a business or business venture within the state of Florida and/or had an office or agency in this state; committed a tortious act within the State of Florida; caused injury to persons within the state of Florida; and Defendants breached a contract in the state of Florida.

10. Defendants are subject to the long arm jurisdiction of this Court pursuant to Fla. Stat. § 48.193(2) because they engaged in substantial and not isolated activity within the state of Florida by, among other things, exercising direct control over SHS franchised businesses, and Plaintiffs' master license business in this state.

11. Venue is proper in the United States District Court for the Southern District of

Florida pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Defendants operated a franchise in Boca Raton, Palm Beach County, Florida, and were given master license rights in this District.

## FACTS COMMON TO ALL COUNTS

12. The SHS franchise system was created in 2005.

13. Defendant SHS is in the business of selling and profiting from a network of franchise businesses providing senior care.

14. In or about March 2006, Defendant SHS offered "master licenses" to applicants which were given the contractual right to grant SHS franchises to franchisees ("Unit Franchisees") in exchange for administering the franchise system in a specific geographic territory designated in the Master License Agreement ("MLA"). Among many other obligations, Master Licensees provided training and technical support services and guidance to unit franchisee owners.

15. In or about January 2009, Hansen first encountered the Yocoms at an International Franchise Association (IFA) franchise show in Miami, Florida.

16. After that encounter, Hansen and the Yocoms had a two-hour meeting at another IFA event in Las Vegas, Nevada, where Hansen advised the Yocoms of his background with the Subway franchise system and requested further information about the SHS franchise system.

17. On or about March 27, 2009, Hansen went to an Open House in Reading, Pennsylvania, where he was provided with the SHS Franchise Disclosure Document (FDD). A copy of the FDD is attached hereto as **Exhibit "A"**.

18. On or about April 22, 2009, Hansen signed the Franchise Agreement and paid the $25,000 franchise fee.

3

19. In or about May 2009, Hansen attend the "New Partners' Orientation" in Reading, Pennsylvania.

20. At that meeting, Mr. Yocom took Hansen aside and told him about becoming a Master Licensee for Florida. Mr. Yocom advised that they were excited to have Hansen as a franchise partner, but it would be a waste of his talents. Mrs. Yocom told Hansen that he could make more money than he could ever imagine as a Master Licensee for Defendant SHS.

21. After the meeting, Hansen told his business partner Weaver about the opportunity presented by the Yocoms.

22. In or about June 2009, Hansen attended the training offered for unit franchisees and Weaver attended the Open House. At the training, Mr. Yocom again took Hansen aside and gave him more information about being a Master Licensee. Mr. Yocom offered to give Hansen and Weaver an agreement that would transfer the twenty-five thousand dollars ($25,000) paid for the individual Unit Franchise and re-appropriate it as a deposit on an MLA. Hansen and Weaver spent the subsequent six (6) months raising capital to purchase a territory.

23. On January 15, 2010, Hansen executed an MLA with SHS for the territory that includes "West Palm Beach-Fort Pierce" and "Miami-Fort Lauderdale" ("Florida MLA" or "Florida Territory"). ~~A copy of the Florida MLA is attached hereto as **Exhibit "B"**.~~

24. Hansen paid SHS $100,000 to obtain this SHS territory. Later in 2010, Hansen and Weaver paid an additional $180,000 for the Orlando and Tampa markets bringing the total investment up to $305,000 for the Master License territory in Florida.

25. SHS approved the name Compassionate Hands, LLC as the name of the entity formed to be the Master Licensee under the Florida MLA.

26. On or about March 4, 2013, Defendants discussed the opportunity for Plaintiffs to

take over a Master License territory in the southwest including Arizona, Nevada and California.

27. On March 15, 2013, Hansen and Weaver executed a transfer agreement to purchase a Master License Agreement that was effective January 14, 2009, for territories in the States of Nevada, Arizona and California ("Southwest MLA" or "Southwest Territory"). ~~Copies of the March 15, 2013, Transfer Agreement and incorporated Southwest MLA are attached hereto as Composite~~ **Exhibit "C"**.

28. Hansen and Weaver became integral to the growth of the SHS franchise system after they took over responsibilities from the corporate office as to the SHS training team, in or about March 2013. The Yocoms had previously appointed Hansen to be on the SHS Operational Committee due to his background in training with Subway.

29. In exchange for providing training services to Master Licensees and Unit Franchisees, the Yocoms advised they would compensate Plaintiffs by increasing royalty payments from the fifty percent (50%) level to the eighty percent (80%) level.

30. Hansen and Weaver provided the "New Partner Orientation" training as well as the Unit Franchisee's training at the SHS home office.

31. In or about September 2013, the Master Licensees and SHS held a successful convention in Reading, Pennsylvania. Hansen and Weaver brought in a human resources company called Infinity to discuss changes in the laws concerning use of independent contractors. At an award banquet, the Yocoms honored the entire SHS home office staff for helping to make the convention a success. The Yocoms gave an award to their housekeeper. However, no mention was given to any of the Master Licensees for the time, effort and financial contributions made toward the convention.

32. At one point in the SHS franchise system, there were 11 Master Licensees

covering territories across the United States. The remaining Master Licensees at the 2013 convention were Peggy Conlon and Cheryl Williams from Illinois; Gary and Sean Langmuir from Maryland; Lynne Svindland from Massachusetts/Connecticut; Sharron Santoni from Pennsylvania; Brian and Tony Carnes from the Carolinas; Saul Serna; Helene and Vicky Toal; and Hansen and Weaver.

33. After the convention in September 2013, the Yocoms told Hansen and Weaver that they were no longer needed to do training because they were going to have Steve Sanders, who Defendant SHS hired in or about May 2013, do the training. Defendants also reduced the royalty fees from the 80% promised back to 50%.

34. Plaintiffs continued to operate and grow their territories per the requirements of the Florida MLA and Southwest MLA in the Florida Territory and the Southwest Territory respectively.

35. Plaintiffs also continued to assist the SHS franchise system in its development in the following ways:

   a. In May 2015, Hansen was asked by SHS to bring in an advertising agency, Source Communication. The agency did the review and declined to take the account because of the sheer inadequacies in the Yocoms' ability to market the system and the marketing plan.

   b. In June 2015, Hansen and Weaver were included in the SHS Client Resource Management (CRM) Council.

   c. On December 7, 2015, Hansen and Weaver volunteered to be on the SHS Convention Council.

   d. On January 13, 2016, Hansen was selected to be a part of the SHS Marketing

>Council. The goal for the council was to be able to unveil a new Client Management System (CMS) with Website redesign by the SHS Convention in April 2016.

36. As of the first quarter in 2016, Plaintiffs had grown their Florida and Southwest territories to 43 Unit Franchisees and were collecting royalty payments and franchise fees from their unit franchise partners in exchange for performing franchisor duties to their Unit Franchisees.

37. On January 18, 2016, Plaintiffs notified Defendant SHS that two checks for $30,000 had arrived from Diana Cabassi and Jennifer Helin, two of Plaintiffs' Unit Franchisee partners, who had expanded their SHS territories.

38. On January 27, 2016, Mr. Yocom sent Weaver the territory expansion addendum to pass along to Ms. Cabassi.

39. Then, on February 2, 2016, without any warning, Defendant SHS sent Plaintiffs a notice of termination of both the Florida MLA and the Southwest MLA. A copy of the termination notice is attached hereto as **Exhibit "DB"**.

40. In the termination notice, Defendants cited to Section 13.10 of the MLAs which provides that Defendant SHS may immediately terminate the MLA for "the making of a material misrepresentation to us before or after being granted the master franchise."

41. Defendants stopped payment on a check sent to Plaintiffs for payments earned in December and January. Specifically, the money paid to Plaintiffs was for their December activities and earnings before the check was voided. Defendants also never sent Plaintiffs the money they earned in January 2016. The total amount due to Plaintiffs for December and January exceeded $60,000.

42. Plaintiffs were serving as the main contact between 43 Unit Franchisees and SHS.

43. Plaintiffs attempted to call and email SHS to discuss the alleged "material misrepresentation" that was made to SHS. Plaintiffs got no response.

44. When they were terminated in February 2016, Plaintiffs were the last remaining SHS Master Licensee left in the system. Specifically, Sharon Santoni sold her territories to Gary and Sean Langmuir who were, subsequent to the sale, terminated by SHS; the Vanderlindes sold their territory to Peggy and Cheryl Williams who were, subsequent to the sale, terminated by SHS; the Carnes converted to a mega-territory and were subsequently terminated; the Toals were terminated; Ms. Svindland was terminated; Mr. Serna was terminated; and the Cotters left the system after selling the Southwest Territory to Plaintiffs.

45. The SHS system was built by Master Licensees, including Plaintiffs, who agreed to earn percentages of the royalty fees and franchise fees paid by franchises they recruited in exchange for a Master License fee. Plaintiffs alone developed 38% of the territories SHS had sold. Plaintiffs and the other Master Licensees served as middle men between the Unit Franchisees and Defendant SHS.

46. By terminating all of the middle men, including Plaintiffs, the franchisor, Defendant SHS, reaped the financial benefits from the Unit Franchisees procured by the Master Licensees without paying the Master Licensees for their territories as would be customary in the franchise industry.

47. After termination of Plaintiffs as Master Licensees, Plaintiffs had a deal in place for their franchise territory in South Florida. Defendants blocked the transfer and sale of that business because Plaintiffs were unwilling to sign a release of claims arising from the Master License relationship.

48. Due to the termination, Plaintiffs lost the benefit of unlimited renewals of the Master License Agreements under which they were expecting to receive substantial profits.

49. All conditions precedent to bringing this action have occurred, have been waived, or have been otherwise satisfied.

50. Plaintiffs have retained the services of the undersigned attorneys and has agreed to pay said attorneys a reasonable fee to prosecute this action.

## COUNT I

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

51. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

52. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 *et seq.*, Florida Statutes ("FDUTPA").

53. At all times material to this action, Plaintiffs were "consumers" as that term is defined under FDUTPA, Section 501.2011(7), Florida Statutes.

54. Section 501.201(3), Florida Statutes, provides that violations of the rules promulgated under the Federal Trade Commission Act, 16 C.F.R. § 436.1 *et seq.* are violations of FDUTPA.

55. Defendant SHS is a "franchisor" as defined in the Amended FTC Franchise Rule, 16 C.F.R. § 436.1(k).

56. FDUTPA is applicable as the sale of the franchise was made in Florida, the franchisee entity and Hansen are principally located and/or reside in Florida, and the fraudulent conduct alleged herein primarily occurred in Florida. Regardless, FDUTPA has no geographical or residential restrictions.

57. Without limitation, Defendants, SHS and the Yocoms, violated the Amended FTC Franchise Rule, and consequently FDUTPA, and committed unfair or deceptive acts or practices, by making misrepresentations concerning their expertise and knowledge of the services and products offered and sold to Plaintiffs; making fraudulent earnings claims; failing to uphold even minimal standards in operating a franchise system; failing to provide proper and adequate support and assistance; failing to provide proper training; making multiple misrepresentations as to the alleged expertise and sophistication of franchisor; lacking of proper assistance by franchisor; failing to properly maintain the high standards supposedly set by franchisor in connection with its franchise system; failing to provide assistance to the franchisee in the establishment of its franchise; failing to create, improve and/or maintain brand recognition or brand loyalty; engaging in a campaign to terminate all master licensees without adequate compensation so as to reap the rewards of the master licensee's hard work in developing territories; and numerous other misrepresentations in connection with the SHS system.

58. Defendant SHS committed *per se* violations of FDUTPA by failing to accurately disclose the franchisor's principal assistance and related obligations of the franchisor in FDD Item 11 in violation of 16 C.F.R. §436.5(k) in the following ways:

    a. Failing to pay the correct and promised amount of royalty fees, exclusive of gross receipts taxes or any sales taxes and returns, received from any unit franchisee located in the Florida Territory and Southwest Territory;

    b. Failing to give detailed, accurate reporting of Gross Sales for the preceding month on or before the 25th day of each month;

    c. Failing to promptly and in good faith analyzing proposed Unit Franchise Agreements and considering them for approval;

    d. Failing to meet with Plaintiffs on each anniversary date of the MLA to determine a reasonable estimate of the population of each Territory and accordingly adjusting the total number of Unit Franchises to be developed by Plaintiffs;

    e. Failing to file necessary paperwork to legally sell franchises in Florida through an Annual Franchise Notice of Exemption with the Florida Department of Agriculture & Consumer Services;

    f. Failing to furnish reasonable assistance to grant franchises and carry out the purposes of the MLA on a timely basis;

    g. Failing to adequately operate an advertising fund that would benefit Plaintiffs and their Unit Franchisees and reaping the benefits of 10% of the royalties paid by Plaintiffs' franchisees before Plaintiffs' share was disbursed; and

    h. Failing to make available adequate general advertising, promotional and educational methods, techniques and materials.

59. Pursuant to Fla. Stat. § 501.203, a *per se* violation of FDUTPA is established by the violation of any rule promulgated pursuant to the Federal Trade Commission Act, and by the violation of any statute, rule, or regulation proscribing unfair or deceptive practices including §436.2 of the Amended FTC Franchise Rule. *See* Fla. Stat. § 501.203(3)(a), (c).

60. Defendant SHS's violations of the Amended FTC Franchise Rule in dealings with Plaintiffs constituted unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices under FDUTPA.

61. Upon information and belief, these acts were committed knowingly, willfully, intentionally, and with actual awareness of the unfairness of the acts.

62. Defendant SHS's acts and practices described in this Count have caused damages to Plaintiffs.

63. Mr. and Mrs. Yocom were either owners of SHS or held executive-level positions, and actively participated in and had some measure of control over the franchisor's deceptive practices. The Yocoms had or should have had knowledge or awareness of the misrepresentations and FDUTPA violations discussed in this Count.

64. Plaintiffs have been required to retain the services of the undersigned counsel to bring this action and are entitled to an award of a reasonable attorney's fee pursuant to Section 501.2105, Florida Statutes.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendants, Seniors Helping Seniors, LLC, Philip Yocom, and Kiran Yocom, for damages, plus pre-judgment interest, reasonable attorney's fees, court costs and such other and further relief as the Court may deem just and proper.

## COUNT II

## VIOLATION OF THE FLORIDA FRANCHISE ACT FLA. STAT. ANN. § 817.416 AGAINST ALL DEFENDANTS

65. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

66. Defendant SHS is a franchisor within the meaning of Section 817.416, Florida Statutes.

67. In selling and establishing the franchise, Defendant SHS violated Section 817.416(2)(a), Florida Statutes.

68. Before the Franchise Agreement was signed, Defendant SHS, through the Yocoms, intentionally misrepresented to Plaintiffs the prospects or chances for success regarding the proposed franchise.

69. In order to induce Plaintiffs to purchase and operate a franchise, SHS, through the Yocoms, intentionally misrepresented to Plaintiffs the prospects or chances for success regarding the proposed franchise by providing Plaintiffs with a master license business system that was intentionally false and misleading due to SHS's intent and goal, at all material times, to terminate Plaintiffs and take over Plaintiffs' Territories.

70. Defendants, the Yocoms, were either owners of SHS or held executive-level positions, and actively participated in and had some measure of control over the franchisor's practices in violation of the Florida Franchise Act.

71. Plaintiffs have been required to retain the services of the undersigned counsel to bring this action and are entitled to an award of reasonable attorney's fees pursuant to Section 817.416(3), Florida Statutes.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendants, Seniors Helping Seniors, LLC, Philip Yocom, and Kiran Yocom, for damages, plus pre-judgment interest, reasonable attorney's fees, court costs and such other and further relief as the Court may deem just and proper.

## COUNT III

### VIOLATION OF FLORIDA BUSINESS OPPORTUNITIES ACT
### FLA. STAT. § 559.801 *et seq.* AGAINST ALL DEFENDANTS

72. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

73. Defendant SHS sold products, equipment, supplies and/or services to Plaintiffs to enable Plaintiffs to become a Master Licensee in Florida in the SHS franchise system.

74. To become a Master Licensee in the SHS franchise system, Plaintiffs were required to pay an upfront fee which exceeded $500.

75. Defendant SHS, through the Yocoms, represented, among other things, that they would provide Plaintiffs with a sales or marketing program enabling Plaintiffs to derive income from the business opportunity provided by SHS, within the meaning of the Florida Sale of Business Opportunities Act § 559.801 ("FSBOA").

76. Without limitation, Defendants violated the FSBOA by ways that include, but are not limited to, making misrepresentations concerning their expertise and knowledge of the services and products offered and sold to Plaintiffs; making fraudulent earning claims; failing to uphold even minimal standards in operating a franchise system; failing to provide proper and adequate support and assistance; failing to provide proper training and marketing; making multiple misrepresentations as to the alleged expertise and sophistication of franchisor; lacking of proper assistance by franchisor; failing to properly maintain the high standards supposedly set by franchisor in connection with its franchise system; failing to provide assistance to Master Licensees in the establishment of their territories; and failing to create, improve and/or maintain brand recognition or brand loyalty.

77. The sale of products, equipment, supplies and/or services to Plaintiffs is not exempt from the disclosure and other requirements of the FSBOA because, at all material times, SHS failed to file the exemption form with the Florida Department of Agriculture and Consumer Services.

78. Defendants' actions and omissions in violation of these described provisions of the FSBOA entitle Plaintiffs to bring this action to recover damages, and for an award of reasonable attorney's fees.

79. Plaintiffs' remedies under the FSBOA are not exclusive but are in addition to any other remedies to which Plaintiffs may be entitled at law or in equity.

80. Plaintiffs have been injured by Defendants due to their violation of FSBOA and therefore may bring a private action for recovery of damages including attorney's fees.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendants, Seniors Helping Seniors, LLC, Philip Yocom, and Kiran Yocom, for damages, plus pre-judgment interest, reasonable attorney's fees, court costs and such other and further relief as the Court may deem just and proper.

## COUNT IV

## FRAUDULENT INDUCEMENT AGAINST SHS

81. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

82. Defendant SHS, operated by the Yocoms and a small staff in a home office, developed a scheme to grow its franchise system nationwide through master license agreements and represented to Plaintiffs that they would financially benefit from the hard work to grow their Territories through royalty payments and franchise fees from Unit Franchisees.

83. Defendant SHS, through the Yocoms, made the following misrepresentations about the SHS franchise system prior to Plaintiffs' agreement to become Master Licensees:

   a. Plaintiffs would earn a certain amount of royalty fees received from Unit Franchisees located in the Florida Territory and Southwest Territory which proved to be less than the amount promised and ultimately cut-off through SHS' plan to eliminate its Master Licensees;

   b. Defendant SHS would give detailed, accurate reporting of Gross Sales for the preceding month on or before the 25th day of each month which was false despite requests for that information from Plaintiffs and other Master Licensees;

15

    c. Defendant SHS would promptly and in good faith analyze proposed Unit Franchise Agreements and considering them for approval which was false and caused delays;

    d. Defendant SHS would meet with Plaintiffs on each anniversary date of the MLAs to determine a reasonable estimate of the population of each Territory and accordingly adjust the total number of Unit Franchises to be developed by Plaintiffs which never occurred;

    e. Defendant SHS would file the necessary paperwork to legally sell franchises in Florida through an Annual Franchise Notice of Exemption with the Florida Department of Agriculture & Consumer Services which never occurred;

    f. Defendant SHS would furnish reasonable assistance to grant franchises and carry out the purposes of the MLA on a timely basis which was false;

    g. Defendant SHS would operate an advertising fund that would benefit Plaintiffs and their Unit Franchisees which never occurred and cost Plaintiffs 10% of the gross sales earned with no benefit received; and

    h. Defendant SHS would make available adequate general advertising, promotional and educational methods, techniques and materials which never occurred.

84. These representations were made in the FDD issued on or about August 3, 2009, and attached as an exhibit hereto, and/or through verbal representations by the Yocoms in discussions with Hansen and Weaver.

85. Defendant SHS knew that these representations made by its owners, the Yocoms, both verbally and through the FDD were false at the time they were made.

86. Defendant SHS made these statements to induce Plaintiffs to invest into the SHS franchise system as Master Licensees to grow the SHS brand nationally along with the other Master Licensees in various parts of the country.

87. Defendant SHS, at all material times, intended to terminate their master licensees one-by-one so that they would reap the benefits of a nationwide franchise system without having to compensate the Master Licensees 50-80% of the royalties coming in through the Unit Franchisees in each territory.

88. Defendant SHS did terminate all of the master licensees leaving only Plaintiffs as the last of 11 Master Licensees before Plaintiffs were ultimately terminated for unexplained reasons despite Plaintiffs being an integral component in the SHS franchise system at the time of termination.

89. Defendant SHS knew that the misrepresentations were false when made and that Plaintiffs would be induced to join the franchise system as Master Licensees in reliance on the false statements.

90. Defendant SHS intended to cause and did cause Plaintiffs substantial monetary damages including consequential damages as Plaintiffs had been receiving compensation through SHS from their Unit Franchisees in the Territories before termination.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendant, Seniors Helping Seniors, LLC, for damages, lost profits and lost business opportunity in excess of $10 million, and such other and further relief as the Court may deem just and proper.

## COUNT V

## CONVERSION AGAINST SHS

91. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

92. Plaintiffs earned royalty payments from its Unit Franchisees in excess of $60,000 in December and January of 2016.

93. Defendant SHS sent the checks to Plaintiffs.

94. On or about February 2, 2016, Defendants stopped payment on checks sent to Plaintiffs for payments earned in December and never sent the money earned in January 2016.

95. Defendant SHS took the payment from Plaintiffs for its financial benefit and otherwise deprived Plaintiffs of the benefit of the services they performed as Master Licensees.

96. Defendant SHS knew Plaintiff had made earned this money for the services rendered as Master Licensees but reaped the benefit of this money for its own.

97. As a direct and proximate result of Defendant SHS's actions, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendant, Seniors Helping Seniors, LLC, together with interest and costs and for such any other relief this Honorable Court deems just and appropriate under the circumstances.

## COUNT VI

## UNJUST ENRICHMENT AGAINST SHS

98. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

99. Plaintiffs allege this count in the alternative to the above counts.

100. Defendant SHS received payments from Plaintiffs.

101. Defendant SHS was aware they were receiving that benefit.

102. Defendant SHS accepted and retained that benefit under circumstances that it would be inequitable for them to retain that benefit.

103. Defendant SHS should be compelled to return the amount of these payments to Plaintiffs.

WHEREFORE, Plaintiffs, Compassionate Hands, LLC, James L. Hansen, and Larry R. Weaver, demand judgment against Defendant, Seniors Helping Seniors, LLC, for damages, and such other and further relief as the Court may deem just and proper.

Plaintiffs hereby demands a trial by jury on all issues so triable.

Respectfully submitted on this 30th day of May, 2018 by,

> */s/ Adam G. Wasch*_____
> Adam G. Wasch
> Florida Bar No. 071082
> awasch@waschraines.com
> Natalie M. Restivo
> Florida Bar No. 1002569
> nrestivo@waschraines.com
> WASCH RAINES LLP
> 2500 N. Military Trail, Suite 100
> Boca Raton, FL 33431
> Tel: (561) 693-3221
> Fax: (561) 404-1104
> *Attorneys for Plaintiffs Compassionate Hands, LLC, Larry Weaver and James Hansen*